UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION


TINA CANALEJO,

    Plaintiff,

v.                                                 CASE NO: 8:14-cv-17-T-26MAP

ADG, LLC d/b/a Great Expressions,

    Defendant.
_____/


**O R D E R**

Before the Court is Defendant's Motion for Summary Judgment with attachments and Statement of Undisputed Facts with attachments (Dkts. 53 & 54), Plaintiff's Response in Opposition and Disputed Facts Submitted in Opposition (Dkts. 59, 60 & 61), the depositions filed in support of Plaintiff's Response (Dkts. 62-69), and Defendant's Reply. (Dkt. 78). After careful consideration of the applicable law, the submissions of the parties, and the entire file, the Court concludes the motion should be denied.

**INTRODUCTION**

In this removed action, Plaintiff alleges violations under the Family Medical Leave Act of 1993, 29 U.S.C. §§ 2601 *et seq.*, as amended, (the FMLA) in the first two counts of the complaint for both interference and retaliation, and under the Florida Whistleblower Act, section 448.01, *et seq.*, Florida Statutes, (the FWA) in the third

count.[1]  This action involves Plaintiff's request for leave under the FMLA for her asthma and breathing problems after she reported leaking and saturated ceiling tiles, mold, and unsafe working conditions.  She was allowed to leave work for several days, but was terminated shortly after her return.  Defendant moves for summary judgment on all three counts of the complaint.[2]

## PERTINENT FACTS

All inferences from the facts must be viewed in the light most favorable to the non-moving party, which is Plaintiff.  Plaintiff had been working for Defendant, a national dentistry practice, for about seven years at the time she was terminated.  She was employed as a practice administrator responsible for the management of her particular Great Expressions office.  In August 2013, approximately three weeks before she was terminated on September 13, 2013, she complained about the leakage issues, saturated ceiling tiles capable of falling, mold, and unsafe working conditions.  Plaintiff urges that the unsafe working conditions violated OSHA as well as Hillsborough County Local Ordinances, Chapter 8, Article IV, regarding maintenance and upkeep of non-residential

---

[1] This Court remanded to state court the fourth count for retaliation under the Florida Workers' Compensation Act (the FWCA).  See docket 13.

[2] Defendant cites Plaintiff's responses in her deposition in support of its contention that she can cite no facts to substantiate her claims.  See docket 53, Exh. A at pp. 20-21.  The Court finds that Plaintiff's response adequately explains her failure to articulate the facts making up the basis of her claims in that she is not an attorney and misunderstood the gravity and import of the initial questions posed.  As the deposition progressed, Plaintiff was able to supply facts that form the basis of her claims.

property.  Following the reporting procedures of Defendant, Plaintiff told her supervisor Barbara Cox and submitted a maintenance ticket on August 13, 2013.[3]  Defendant hired a mold remediation company to test the mold levels.  Defendant contends that the mold found was non-toxic as opposed to dangerous.

Before she left work, Plaintiff told her supervisor she needed to leave because she was having breathing problems, which were exacerbated from her asthma, from extended exposure to the mold.  Plaintiff notified human resources on August 14, 2013, by telephone that she was experiencing breathing problems from the mold and needed breathing treatments.[4]  Also on August 14, Plaintiff sent screen shots of a doctor's note showing that she was "medically excused" from August 14 through 19, 2013.  When she received instructions from her doctor not to return to work until the mold had been eradicated, she called human resources and told them she wished to have her leave covered by FMLA.  Defendant told Plaintiff that FMLA leave was not available.  Defendant advised her to file a worker's compensation claim, which she did, to receive income while her FMLA coverage was verified and approved.  Plaintiff used vacation

---

[3] She wrote on the ticket:
> [The] ceiling in OS closet where the surgery equipment is [w]as falling in due to water overflow from our A/C unit. This has been ongoing due to the unit needing to be replaced per the last A/C guy that was out here about a month ago– he stated the fix would only last temporarily.  The heart monitor has been completely soaked along with other supplies in the closet– thanks.

[4] Plaintiff also sent emails addressing mold making employees sick.

time, and when she returned to work, she was told that FMLA leave was no longer available because the doctor had released her to return to work.

Plaintiff returned to work on August 26. On August 26 and 29, Plaintiff emailed Defendant about the status of the mold retesting process. She stated that she was experiencing tightening of the chest. On August 29, Plaintiff submitted a worker's compensation form called "Employer's First Notice of Inquiry."[5] The claim was denied on September 10, 2013. Plaintiff was terminated three days later.

Defendant articulates many reasons for Plaintiff's termination, none of which are tied to Plaintiff's complaints about unsafe working conditions or her request to take leave. Without dissecting every possible reason asserted by Defendant, suffice it to say that all focus on Plaintiff's inability to get along with people, in particular not being a good "fit" with other workers, ranging from the dentists to the managers to the customers. Defendant also contends that it intended to fire Plaintiff much earlier than September 2013, but for various reasons never did until shortly after she complained about the mold and other problems with the premises. Of the various incidents, one involved her "calling out" the chief operations officer at an executive meeting in May 2013. Despite such occurrences, Plaintiff was never disciplined or warned about the consequences of her behavior. Defendant never applied its progressive disciplinary policy to Plaintiff, albeit

---

[5] The form included the following: "A/C unit leaking water causing ceiling to fall in. Active mold spores in ceiling but not toxic. Tina does however have asthma and needs breathing treatments now."

Defendant retained the discretion to decide which employees would be subject to progressive discipline.

Over the years Plaintiff worked for Defendant, she received merit increases each year. She also received a very high numerical evaluation before she was terminated, a 2.8 out of 3.0, which is rated "best." Against this backdrop, the Court will discuss each claim.

## SUMMARY JUDGMENT STANDARD

Summary judgment is properly granted where there is no genuine dispute regarding a material fact. Fed.R.Civ.P. 56(a). On a motion for summary judgment, the court must review the record, and all its inferences, in the light most favorable to the nonmoving party. See United States v. Diebold, Inc., 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962). Neither credibility determinations nor weighing the evidence may play any role in summary judgment proceedings. See Reeves v. Sanderson Plumbing Prods, Inc., 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed. 2d 105 (2000); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The Court may not decide a genuine issue of fact at the summary judgment stage. See Fernandez v. Bankers Nat'l Life Ins. Co., 906 F.2d 559, 564 (11th Cir. 1990). Credibility determinations are best addressed at trial. See Anderson, 477 U.S. at 255, 106 S.Ct. at 1513-14.

## FMLA INTERFERENCE

The FMLA makes is unlawful "for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter." 29 U.S.C. § 2615(a)(1).  To establish FMLA interference, the employee must show entitlement to FMLA benefits and the employer's denial of or interference with those benefits.  See Strickland v. Water Works & Sewer Bd. of City of Birmingham, 239 F.3d 1199, 1206 (11th Cir. 2001).  The employee need demonstrate only by a preponderance of the evidence that she was denied a right or employee benefit.  Pereda v. Brookdale Senior Living Communities, Inc., 666 F.3d 1269, 1274 (11th Cir. 2012);  Hurlbert v. St. Mary's Health Care Sys., Inc., 439 F.3d 1286, 1293 (11th Cir. 2006) (citing Strickland at 1207).  The employer's intent is irrelevant in an interference claim, unlike a retaliation claim.  Hurlbert, 439 F.3d at 1293 (citing Strickland at 1208).

At the outset, Plaintiff claims she did not receive FMLA leave even though she requested it.  She used her vacation time to cover her leave while ill.  According to Plaintiff, she never received any of the required FMLA notices.  In fact, Defendant informed Plaintiff at some point that FMLA leave "was no longer available."  Defendant contends, quite the contrary, that Plaintiff was granted FMLA leave.  At the very least, a genuine issue of fact exists as to whether Plaintiff was ever granted FMLA leave.

Assuming Plaintiff did not receive FMLA notices, she must nevertheless prove that she was prejudiced from the prevention of properly asserting her rights.  See Willmore-Cochran v. Wal-Mart Assocs., Inc., 919 F.Supp.2d 1222, 1248 (N.D. Ala.

2013) ("Several courts have recognized that an employee may prevail on an interference claim based on the employer's failure to comply with general notice requirements where such failure prevented the employee from properly asserting a right to FMLA leave."). Where the employee suffers prejudice as a result of the employer's failure to comply with the notice requirements of the FMLA, it "may be reasonable" to find interference with FMLA rights. Willmore-Cochran, 919 F.Supp.2d at 1248 (citing Ragsdale v. Wolverine World Wide, Inc., 535 U.S. 81, 90, 122 S.Ct. 1155, 1162, 152 L.Ed.2d 167 (2002)). Plaintiff must establish that Defendant's failure to advise of her right to leave under FMLA rendered her "unable to exercise that right in a meaningful way, thereby causing injury." See Conoshenti v. Public Serv. Elec. & Gas Co., 364 F.3d 135, 143 (3d Cir. 2004).

Plaintiff could have suffered prejudice because she was unable to plan her leave, having been required to take vacation. Plaintiff was terminated without having been notified of her right to FMLA leave. Although the precise prejudice Plaintiff suffered as a result of the failure to be notified is unclear, i.e., whether the denied FMLA leave actually resulted in her termination, the Court, nevertheless, denies summary judgment in favor of Defendant on the interference claim.

## FMLA RETALIATION

There is no direct evidence of retaliation in this case, and therefore Plaintiff must rely on circumstantial evidence in her claim for retaliation under the FMLA. In such

situations, this Court must apply the burden-shifting framework required by McDonnell Douglas.[6] To establish retaliation, Plaintiff must allege that "(1) she engaged in statutorily protected activity, (2) she suffered an adverse employment decision, and (3) the decision was causally related to the protected activity." Strickland v. Water Works and Sewer Bd. of City of Birmingham, 239 F.3d 1199, 1207 (11th Cir. 2001). If Plaintiff makes a *prima facie* case, the burden shifts to the employer to articulate a legitimate reason for the adverse action. Hurlbert, 439 F.3d at 1298 (citing Smith v. BellSouth Telecomms., Inc., 273 F.3d 1303, 1314 (11th Cir. 2001)). If the employer gives legitimate reasons, then the plaintiff must show the reasons are pretextual. Hurlbert, 439 F.3d at 1298 (citing Smith, 273 F.3d at 1314).

Defendant challenges only the causal connection between the filing of an FMLA claim and her termination. Defendant contends that all of the bases for her termination were related solely to her unsatisfactory performance and all occurred long before the exercise of protected activity in August 2013. Defendant argues that Defendant proffered the legitimate non-discriminatory reasons that Plaintiff did not get along with her co-workers and was not committed to the company,[7] and that Plaintiff cannot show that these reasons are pretextual. Despite Defendant's argument, a close proximity between the

---

[6] McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-05, 93 S.Ct. 1817, 1824-26, 36 L.Ed.2d 668 (1973) (articulating the three-step burden-shifting framework); see also Smith v. Lockheed-Martin Corp., 644 F.3d 1321, 1325-26 (11th Cir. 2011).

[7] There is conflicting evidence that she sought a position in a Colorado office of Defendant.

protected conduct and the adverse action is generally "sufficient circumstantial evidence to create a genuine issue of material fact of a causal connection." Hurlbert, 439 F.3d at 1298 (quoting Brungart v. BellSouth Telecomms., Inc., 231 F.3d 791, 799 (11th Cir. 2000)).[8] The approximate three-week period constitutes the close proximity required to create a genuine issue of fact.

With respect to Plaintiff's showing of pretext, the issue is whether Plaintiff presented evidence "sufficient to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision." Martin v. Brevard Cnty. Public Schools, 543 F.3d 1261, 1268 (11th Cir. 2008) (quoting Hurlbert, 439 F.3d at 1298).  Defendant's decision not to use the progressive disciplinary policy, the identified incidents, without concomitant disciplinary action over the years, and Plaintiff's merit raises and recent high evaluation, all could gravitate toward a conclusion that the reasons were pretextual.  Hence, the close proximity, when coupled with the questions of fact regarding pretext, warrants denial of summary judgment on the claim of FMLA retaliation.

**FWA RETALIATION**

---

[8]  An exception exists to this rule where the decision maker did not have knowledge that the employee engaged in protected conduct; however, in this case, Mr. Brody knew that Plaintiff had complained about the mold and desired to take leave for her breathing difficulties caused by the mold.

To prevail on a claim brought pursuant to the FWA, the plaintiff must show that 1) she "objected to or refused to participate in any illegal activity, policy or practice" of the defendant; 2) she "suffered an adverse employment action;" and 3) "the adverse employment action was causally linked to [her] objection or refusal." Fla. Stat.§§ 448.101, *et seq*.; Aery v. Wallace Lincoln-Mercury, LLC, 118 So.3d 905, 916 (Fla.Dist.Ct.App. 2013). After the plaintiff establishes a *prima facie* case, then the burden shifts to the employer to proffer a legitimate, non-retaliatory reason for the adverse employment action. Aery, 118 So.3d at 916. The plaintiff must then show by a preponderance of the evidence that the reason is pretextual. Aery, 118 So.3d at 916.

Defendant argues that the FWA requires that the activity, policy or practice objected to must be, *in fact*, a violation of a law, rule or regulation, relying on White v. Purdue Pharma, Inc., 369 F.Supp.2d 1335, 1337 (M.D. Fla. 2005). Contrary to the standard of an actual violation as espoused in White, the standard set forth in Aery is an objectively reasonable one that requires only a "good faith, objectively reasonable belief" that Plaintiff's activity is protected by the statute. Defendant contends Aery is, in essence, incorrectly decided, noting that it relied on a federal district court case different from White.[9] Defendant reasons that the mold was not harmful or dangerous and was not

---

[9] Aery cited Luna v. Walgreen Co., 575 F.Supp.2d 1326, 1343 (S.D. Fla. 2008), for this proposition. Aery does not mention White.

in violation of OSHA, and therefore her reporting mold did not constitute a protected activity under the FWA.

Of the federal courts that have addressed the applicable standard after a Florida appellate court decided Aery,[10] two have declared Aery the new FWA standard. See Odom v. Citigroup Global Markets, Inc., No. 3:11-cv-75-RS-EMT, 2014 WL 6610069, at *4 (N.D. Fla. Nov. 20, 2014); Hernandez v. Publix Super Markets, Inc., 11 F.Supp.3d 1177, 1183 (S.D. Fla. 2014). Both courts adopted the standard espoused in Aery. This Court agrees with the reasoning set forth in Odom and Hernandez for following the standard in Aery. "While the federal courts developed the 'actual violation' standard, no state court opinion that carries binding authority appears to have ever addressed the issue, stated the rule, or even cited approvingly to a federal court's articulation of the rule. [Now] Aery is the only binding Florida authority on the matter." Odom, 2014 WL 6610069, at *5. Under the dictates of Erie[11] that federal courts must apply substantive law of the forum state, federal courts are bound to follow the state's intermediate appellate courts in the absence of a decision made by the state's highest court. It is not

---

[10] One federal district court has noted a split of authority as to whether the FWA standard requires proof of an actual violation of law or, instead, a good faith belief that a violation of law has occurred. See Bonnafant v. Chico's FAS, Inc., 17 F.Supp.3d 1196, 1201 (M.D. Fla. 2014). Another federal district court has noted the dispute among courts. See Denarii Sys., LLC v. Arab, No. 12-24239-CIV, 2014 WL 2960964, at *3 (S.D. Fla. Jun. 30, 2014).

[11] Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

this Court's function to question the state appellate court's reasoning.  <u>White</u> did not have the benefit of any binding Florida law to follow.

Having determined that the good faith, objectively reasonable belief standard applies under the FWA, the Court finds that, taking the evidence in the light most favorable to Plaintiff, she held a good faith belief the mold, saturated ceiling tiles, and other conditions constituted violations of OSHA and Hillsborough County ordinances. Consequently, summary judgment on the FWA claim is denied.

It is therefore **ORDERED AND ADJUDGED** that Defendant's Motion for Summary Judgment (Dkt. 53) is **DENIED**.

**DONE AND ORDERED** at Tampa, Florida, on January 29, 2015.

s/*Richard A. Lazzara*
**RICHARD A. LAZZARA**
**UNITED STATES DISTRICT JUDGE**

<u>**COPIES FURNISHED TO**</u>:
Counsel of Record