UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

TINA CANALEJO,

        Plaintiff,

vs.                             CASE NO. 8:14-cv-17-T-MAP

ADG, LLC,

        Defendant.

_____/

## ORDER

After a three-day trial, the jury found Defendant had violated Plaintiff's rights under

the Florida Whistle-Blower's Act (Fla. Stat. § 448.103) ("FWA") and was due more than

$15,000 in damages (doc. 145).  Plaintiff now seeks $418,047.00 in attorneys' fees (doc.

150) and $13,238.74 in costs (doc. 151).  Defendant opposes these demands saying Plaintiff

was only partially successful and should get nothing, or if she gets fees it should be far less

than what she seeks, and some of her costs are inappropriate (doc. 156).  After consideration,

I award Plaintiff $54,918 in attorneys' fees and $10,964.68 in costs.[1]

*A.  Fee Standards*

Assessing the merits of a fee petition involves a three-step inquiry.  Has Plaintiff

"prevailed" in the statutory sense?  If so, what is the appropriate lodestar?  And should the

court adjust that lodestar?  *Smith v. Sch. Bd. of Palm Beach Cty.*, 981 So. 2d 6, 8-9 (Fla. 4th

---

[1]  The Parties consented to my jurisdiction.  28 U.S.C. § 636.

DCA 2007) (citing *Dillard v. City of Greensboro*, 213 F.3d 1347, 1353 (11th Cir. 2000)). Plaintiff bears the burden as to all this and should present the court with enough particularity, assuming she is entitled to fees, so that it can reasonably determine the lodestar. *Norman v. Housing Auth. of the City of Montgomery*, 836 F.2d 1292, 1303 (11th Cir. 1988). *Norman* also instructs the fee-petition counsel to "include a summary, grouping the time entries by the nature of the activity or stage of the case" and warns fee opponents to be "reasonably precise" in their objections and proof. *Id.* at 1301, 1303. Unfortunately, Plaintiff omits any summary, and Defendant could have objected more precisely.[2] Irrespective of the Parties' shortcomings, *Norman* acknowledges that "[t]he court … is itself an expert on the question and may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of witnesses as to value." *Id.* at 1303.

### B.  Prevailing Party

On the eve of trial, Plaintiff abandoned her Family Medical Leave Act ("FMLA") interference claim and focused instead on her retaliation claims under the FMLA and FWA. The jury found for Plaintiff on her FWA claim but rejected her FMLA claim. Defendant maintains that the FMLA claim predominated the litigation. Having prevailed on that score, Defendant reasons that the Court should view it as the "prevailing party." Alternatively, if

---

[2]  Plaintiff should have grouped her attorneys' hours for stages of the litigation, for example: complaint; written discovery; depositions; summary judgment pleadings; final pretrial conference preparation; and trial time and preparation.

the Court finds Plaintiff prevailed, the Court should exercise its discretion under § 448.104, Florida Statutes, and still deny Plaintiff her fees.   To some extent, both arguments are interrelated, although the analysis for each is different.

Neither the FWA nor its legislative gloss offers guidance for deciding which party prevailed or for determining when fees would be appropriate.  *Smith v. Psychiatric Sols., Inc.*, 750 F.3d 1253, 1259 (11th Cir. 2014).   Florida courts in other fee-shifting schemes have generally concluded that a "prevailing party" is one who "'succeed[ed] on any significant issue in litigation which achieves some of the benefit'" to the party bringing the suit.  *Trytek v. Gale Indus., Inc.*, 3 So. 3d 1194, 1200 (Fla. 2009) (quoting *Moritz v. Hoyt Enter., Inc.*, 604 So. 2d 807, 809-10 (Fla. 1992)).  That test is easily applied here.  Although Plaintiff abandoned one of her FMLA claims and failed to prevail on the other, her compensation under the FWA exceeded what she could have recovered under the FMLA.[3] Despite Defendant's protests, Plaintiff is the prevailing party using this standard.

Defendant recognizes *Moritz*'s rule but says the Court should still deny fees.  This argument is more directed to the Court's discretion.  In other words, the Defendant posits the Plaintiff did not win enough to be entitled to fees.  Section 448.104 states that "[a] court *may* award reasonable attorney's fees, court costs, and expenses to the prevailing party."  Hence, an award of attorneys' fees to the prevailing party under § 448.104 "is not automatic and is left to the discretion of the district court," as the Defendant argues.  *Bell v. Georgia–Pac.*

---

[3] Both schemes covered Plaintiff's lost wages, but the FWA additionally covered her compensatory damages.

*Corp.*, No. 5:04–cv–50–OC10–GRJ, 2005 WL 1618223, at *1 (M.D. Fla. July 6, 2005).

Although § 448.104 does not require a court to consider any factors in deciding whether or

not to award attorneys' fees, district courts have been guided by the following five factors:

(1) the scope and history of the litigation, including whether the defendant continued to

prolong the action despite the presence of an efficient resolution; (2) the parties' wealth

disparity; (3) whether an award of fees would frustrate the FWA's remedial purpose by

deterring worthy claimants; (4) whether the opposing party's case was meritorious or

frivolous; and (5) whether the opposing party acted in good or bad faith.[4]   *Blanco v.*

*Transatlantic Bank*, No. 07–20303–Civ, 2009 WL 2762361, at *2 (S.D. Fla. Aug. 31, 2009).

Frankly, none of these considerations enure to Defendant's benefit, but that finding is not

critical as these factors do not control a court's decision and are not the only ones a court can

consider. *Id.*  Defendant's appeal here focuses instead on Plaintiff's lack of FMLA success.

While Plaintiff only partially succeeded on the legal theories she advanced, those

theories were, as the Plaintiff asserts, related and grounded on a common core of facts.  In

such instances, Florida courts take the position that an "'award of attorney's fees should not

be reduced *in the absence of showing that the . . . attorneys spent a separate and distinct*

*amount of time in defending a count upon which no attorney's fees were awardable*.'"

*Chodorow v. Moore*, 947 So. 2d 577, 579 (Fla. 4th DCA 2007) (emphasis in original)

---

[4] Because the case law under the Florida Whistleblower Act provided little guidance, the district court in *Blanco* drew its non-exhaustive list of factors from other fee-shifting Florida statutes including the analogous Florida Deceptive and Unfair Trade Practices Act and the Florida Offer of Judgment Act. *Blanco*, 2009 WL 2762361, at *2 nn. 4–9.

4

(quoting *Chrysler Corp. v. Weinstein*, 522 So. 2d 894, 896 (Fla. 3d DCA 1988)); *see also Durden v. Citicorp Trust Bank, FSB*, 763 F. Supp. 1299, 1306-07 (M.D. Fla. 2011) (applying Florida law). The reasoning for the proposition is simple. "'[T]ime spent marshaling the facts' of the related claims is compensable because it 'likely would have been spent defending any one or all of the counts.'" *Id.* at 1306 (quoting *Caplan v. 1616 E. Sunrise Motors, Inc.*, 522 So. 2d 920, 922 (Fla. 3d DCA 1988)). On the other hand, if Plaintiff seeks compensation for time on a "discrete issue" dealing with a claim for which no compensation is authorized, those hours should be subtracted from the total hours expended. *Id.* at 1306-07. Although Defendant does not specifically advance this "discrete issue" argument, its contention that the Court should exercise its discretion in denying fees is essentially a subset of the "discrete issue" reasoning. Namely, Defendant is arguing too that it should not have to pay Plaintiff for work on a claim that proved unsuccessful, presuming of course that her failed work can be parsed from her successful effort.

Plaintiff argues an allocation is not practicable because her claims were too intertwined. I disagree. Accordingly, I have several options. I could require Plaintiff to identify those attorneys' hours expended in prosecuting her FWA claim. *See Loranger v. Stierheim*, 10 F.3d 776, 782 (11th Cir. 1994) ("[W]hen a request for attorney's fees does not permit easy division between compensable and non-compensable hours, a district court should require the party seeking fees to refashion its request."). Having examined Plaintiff's billing records, however, it is unlikely that Plaintiff would be in any better position than the Court for parsing the compensable hours from the uncompensable ones, particularly when

she maintains her claims were inextricably intertwined.  The other options are to conduct an hour-by-hour analysis, or to reduce the requested hours with an across-the-board cut, or to adjust the lodestar to reflect Plaintiff's partial success.  *Bivens v. Wrap It Up, Inc.*, 548 F.3d 1348, 1351-52 (11th Cir. 2008).  No matter the option picked, the Court has to be mindful not to double count.  *Id.*  Namely, the Court cannot reduce hours and then cut across the board for the same reasons it reduced the hours.  Nor can the Court reduce the hours associated with the uncompensable FMLA claims to arrive at a lodestar and then adjust the lodestar downward to account once more for the uncompensable claims.  *Id.*  The appropriate formula is to apply an across-the-board cut to parse out the excessive hours Plaintiff's attorneys spent litigating all the claims and then to fix the prevailing market rates for all Plaintiff's attorneys.  With that lodestar in place, the Court can then adjust downward to reflect Plaintiff's partial success.  *Fla. Patient's Comp. Fund v. Rowe*, 472 So. 2d 1145, 1151 (Fla. 1985).

   *C.  Lodestar Rules*

   Florida courts take the federal approach, multiplying the reasonable hours expended by the reasonable hourly rate to arrive at a lodestar.  *Rowe*, 472 So. 2d at 1151 (Fla. 1985).  Billing judgment is important.

> 'Reasonably expended' means the time that ordinarily would be spent by lawyers in the community to resolve this particular type of dispute.  It is *not* necessarily the number of hours actually expended by counsel in the case.  Rather, the court must consider the number of hours that should reasonably have been expended in that particular case. . . . In this respect, the magnitude of the case should be a consideration.

*In re Estate of Platt*, 586 So. 2d 328, 333-34 (Fla. 1991) (emphasis in original).   In other words, counsel may only claim those hours that he or she could properly bill to the client. *Rowe*, 472 So. 2d at 1150.   A court considers the factors listed in Rule 4-1.5 of the Rules Regulating the Florida Bar when computing the lodestar: (1) the time and labor required, the novelty, complexity, and difficulty of the questions involved, and the skill requisite to perform the legal service properly; (2) the likelihood that the acceptance of the particular employment will preclude other employment by the lawyer; (3) the fee, or rate of fee, customarily charged in the locality for legal services of a comparable or similar nature; (4) the significance of, or amount involved in, the subject matter of the representation, the responsibility involved in the representation, and the results obtained; (5) the time limitations imposed by the client or by the circumstances and, as between attorney and client, any additional or special time demands or requests of the attorney by the client; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, diligence, and ability of the lawyer or lawyers performing the service and the skill, expertise, or efficiency of effort reflected in the actual providing of such services; and (8) whether the fee is fixed or contingent.   *See Standard Guar. Ins. Co. v. Quanstrom*, 555 So. 2d 828, 834 (Fla. 1990).   A reasonable hourly rate is "the prevailing 'market rate,' *i.e.*, the rate charged in that community by lawyers of reasonably comparable skill, experience and reputation, for similar services."   *Rowe*, 472 So. 2d at 1151; *see also Norman*, 836 F.2d at 1299 (citations omitted).

       *1.  case particulars*

7

Although this case was predicated on two statutory schemes (the FMLA and the FWA), its facts were never complicated.  It first began in state circuit court (although the more reasonable value of the case eventually approached the limits of county court).[5]  Instead of defending in state court, which might have been more economical, Defendant elected to remove the dispute here (as was its prerogative; but choices involve consequences).  But whatever the forum, and whatever the particular legal theory Plaintiff advanced, the issues were always whether Defendant illegally fired Plaintiff for complaining about mold in the workplace and, if so, what were her damages, recognizing that she quickly found work at roughly the same pay as before and that she appeared to have suffered little distress from the event.

This case had limited value from the outset.[6]  Notwithstanding, both sides litigated the dispute as if the monetary stakes far exceeded what the facts supported.  Neither side appreciated *In re Estate of Platt*'s admonition – that the magnitude of the case matters.  Who

---

[5]  The jurisdictional limit of county court is $15,000, exclusive of interests, costs, and attorneys' fees.  Fla. Stat. § 34.01(c).

[6]  Both sides agreed to the damage formulas to be applied to the FMLA and FWA claims.  Under the FMLA, Plaintiff was entitled to recover her net loss wages and benefits from her termination date through the verdict date.  The scope of damages under the FWA were theoretically broader: the difference between lost wages and benefits to the date of the trial and what Plaintiff actually earned during that time; any wages and benefits to be lost in the future; and any emotional pain and mental anguish experienced in the past or to be experienced in the future.  *See* doc. 144 at 17-23.  Plaintiff did not present an economist, nor did she present any mental health expert attesting to her suffering any emotional pain or mental anguish.  And given the fact that the difference in wages tended to grow with the passage of time, even if ever so slightly, the case's value when Plaintiff filed her complaint was less than it was when she received her verdict.

is more blameworthy for this omission is unclear.  Each side points at the other.  Likely, both are at fault, and both contributed to the excessive litigation.  For example, Plaintiff used six lawyers, including three very experienced ones; Defendant, who complains about Plaintiff's number of lawyers, employed five, including lead counsel whose office is in Michigan and local counsel whose office is in Miami.[7]  Each side complains about the other's settlement demands, with both contending the other's was unreasonable from the outset.  Defendant's summary judgment motion included 125 pages of exhibits.  And when the district judge denied the motion, a predictable result due to the timely juxtaposition of the protected activity and the adverse employment action, Defendant moved for reconsideration of the denial.  Each side tallied up more than 50 exhibits for the trial (62 for Plaintiff and 52 for Defendant), even though only a handful were needed (the Parties stipulated to almost all the exhibits).  After a three-day trial, the jury awarded Plaintiff $10,502 in lost wages, which was about what she asked for, and $5,000 in compensatory damages, which was more than fair given the evidence she presented on that score.

The jury's verdict more than represented the reasonable value of the case from its start.  Yet, Plaintiff now demands $418,047.00 in attorneys' fees, a figure she conspicuously fails to point out in her fee petition.  Instead, she recites only the lodestar amount – $209,023.50 – and asks the Court to multiply this figure by two (the multiplier), as if Plaintiff's failure to do the math somehow makes her true demand, which is 27 times her

---

[7]  Defendant's team of lawyers is only known to me from a review of the docket sheet.

damages, more palatable.  Presumably in an effort to make $418,047.00 seem like a bargain, Plaintiff adds that she contemplated asking for a multiplier of 2.5.  In other words, she is saying she would have been justified in asking for $522,558.75 in fees but decided to forego $104,511.75 in compensable time and settle for the more reasonable figure of $418,047.00.

### 2. fee objections

Defendant asserts that Plaintiff's attorneys grossly over billed and overcharged: Hill spent too much time on the case (224.48 hours); Cabassa billed excessively for correspondence (75 hours); Fenton, who replaced Cabassa as lead counsel, spent far more time in prepping for a three-day trial than needed (more than 100 hours) and necessarily duplicated Cabassa's work in "getting up to speed;" only two lawyers should be compensated (Cabassa and Hill); Wenzel's charged rate should be reduced to $300; Fenton's, Cabassa's, and Smith's rates should be reduced to $250; Hill should have charged no more than $200; and Fontugne's rate should be at $150.  What is notably absent from Defendant's response and from its expert's affidavit, however, is what the lodestar should be.  Defendant offers no specifics, other that what can be gleaned from its fee expert, who failed to calculate the lodestar.  My math when taking into account the expert's reduction of hours and attorneys, as well as reduced hourly rates, puts his lodestar determination at $50,180.

### D. Lodestar, Adjustments, and Multipliers

Defendant's objections about excessive billing have merit.  Plaintiff's counsel expended 603.1 hours from a team of lawyers whose rates ranged from $450 to $175.  This equates to 15 full work weeks (at 40 hours a week), for a case that both sets of lawyers made

10

more complicated than necessary.   But culling through the voluminous billing records is

unworkable.   Instead of engaging in the pick and shovel work necessary to make a more

precise determination, I find an across-the-board reduction of 40% appropriate for the hours

charged.   *Loranger*, 10 F.3d at 783;  *see also Lee v. Am. Eagle Airlines, Inc.*, 93 F. Supp. 2d

1322, 1334 (S.D. Fla. 2000).   Accordingly, I find the following hours reasonable:

| Counsel | Number of Hours Requested | Reasonable Hours |
|---|---|---|
| Brandon Hill | 224.8 | 134.9 |
| Luis Cabassa | 155.8 | 93.5 |
| Matthew Fenton | 149.0 | 89.4 |
| Elisabeth Fontugne | 47.1 | 28.3 |
| Steven Wenzel | 23.2 | 13.9 |
| Donna Smith | 3.2 | 1.9 |
| **TOTAL** | 603.1 | 361.9 |

Both side's experts disagree on whether Plaintiff's hourly rates are reasonable.

Plaintiff says her rates are consistent with – or lower than – those billed in similar actions in

this district (doc. 150-3 at 4-5).  Defendant looks to its expert's firm for the prevailing market

rates.   After weighing the expert affidavits, reviewing case law concerning fee awards for

attorneys with similar experience, and considering my own experience, knowledge of market

rates, and the case, I find the following rates to be reasonable:

| Counsel | Reasonable Hourly Rate |
|---|---|
| Steven Wenzel | $350 |
| Matthew Fenton | $300 |

11

| | |
|---|---|
| Luis Cabassa | $300 |
| Donna Smith | $300 |
| Brandon Hill | $200 |
| Elisabeth Fontugne | $150 |

*See generally Sure Fill & Seal, Inc. v. GFF, Inc.*, No. 8:08-CV-882-T-17TGW, 2012 WL 5227676, at *13 (M.D. Fla. Apr. 2, 2012) report and recommendation adopted, No. 8:08-CV-882-T-17-TGW, 2012 WL 5199670 (M.D. Fla. Oct. 22, 2012) (awarding $175/hour for an attorney in his sixth year of practice); *Baker v. Fid. Mortg. Direct Corp.*, No. 8:10-CV-2596-T-24, 2011 WL 1560665, at *4 (M.D. Fla. Apr. 25, 2011) (awarding Mr. Cabassa $300/hour in a FLSA matter); *Johnson v. Potter*, No. 8:08-CV-1279-T-24TGW, 2011 WL 672347, at *4 (M.D. Fla. Feb. 17, 2011) (awarding $150/hour for an attorney with little experience); *Ottaviano v. Nautilus Ins. Co.*, 717 F. Supp. 2d 1259, 1270 (M.D. Fla. 2010) (hourly rates in the $300–$400 range are reserved for the most skilled attorneys litigating complex cases).

The sum of these hourly rates multiplied by the number of hours reasonably expended, results in a lodestar of $91,530:

| Counsel | Hourly Rate | Number of Hours | Total |
|---|---|---|---|
| Steven Wenzel | $350 | 13.9 | $4,865 |
| Matthew Fenton | $300 | 89.4 | $26,820 |
| Luis Cabassa | $300 | 93.5 | $28,050 |
| Donna Smith | $300 | 1.9 | $570 |

| Brandon Hill | $200 | 134.9 | $26,980 |
| Elisabeth Fontugne | $150 | 28.3 | $4,245 |
| **Total Lodestar** | | | **$91,530** |

Defendant argues that a downward adjustment of the lodestar is appropriate. I agree. Plaintiff is not entitled to compensation for those hours spent litigating her FMLA claim, at least to the extent that an apportionment is feasible from her successful FWA claim. *Rowe* instructs that "[w]hen a party prevails on only a portion of the claims made in the litigation, the trial judge must evaluate the relationship between the successful and unsuccessful claims and determine whether the investigation and prosecution of the successful claims can be separated from the unsuccessful claims." 472 So. 2d at 1151.

Had this case proceeded solely on Plaintiff's FWA claim, the costs of litigation would have been less. Although the core facts centered on Plaintiff's complaints about mold in the workplace, the factual predicate for the FMLA involved more than what the FWA claim required. To prove her FMLA counts (even the one she abandoned before the trial), Plaintiff had to show she had complied with the FMLA's scheme and with Defendant's policies. Defendant's point that it spent more time litigating the FMLA side than the FWA side is a valid one. Much of the summary judgment motion was directed to the FMLA claims (doc. 53). Most of the discovery was dedicated to the FMLA claims. And a clear majority of the exhibits related to the FMLA claims. Lastly, if Plaintiff had just proceeded on her FWA claim, the trial would not have taken three days. These circumstances warrant a substantial downward adjustment of the lodestar – 40%. This reduces the lodestar to $54,918 and takes

13

into account that both claims (FMLA and FWA) involved a core set of facts and that Defendant likewise contributed to the excess litigation.

With the lodestar adjusted, the applicability of a multiplier is next. *Quanstrom*, 555 So. 2d at 831-834. Three factors are to be considered before awarding a multiplier: (1) whether the relevant market requires a contingency fee multiplier to obtain competent counsel, (2) whether the attorneys were able to mitigate the risk of nonpayment in any way, and (3) whether any of the factors set forth in *Rowe, supra*, are applicable, especially the amount involved, the results obtained, and the type of fee arrangement between the attorneys and the clients. *Quanstrom*, 555 So. 2d at 834. If a court decides a multiplier is appropriate, *Quanstrom* offers this guidance: "If the trial court determines that success was more likely than not at the outset, it may apply a multiplier of 1 to 1.5; if the trial court determines that the likelihood of success was approximately even at the outset, the trial judge may apply a multiplier of 1.5 to 2.0; and if the trial court determines that success was unlikely at the outset of the case, it may apply a multiplier of 2.0 to 2.5." *Id.*

No multiplier is warranted. As to *Quanstrom*'s first prong, "there should be evidence in the record, and the trial court should so find, that without risk-enhancement [the] plaintiff would have faced substantial difficulties in finding counsel in the local or other relevant market." *Sun Bank of Ocala v. Ford*, 564 So. 2d 1078, 1079 (Fla. 1990). "If there is no evidence that the relevant market required a contingency fee multiplier to obtain competent counsel, then a multiplier should not be awarded." *USAA Cas. Ins. Co.v. Prime Care Chiropractic Ctrs., P.A.*, 93 So. 3d 345, 347 (Fla. 2d DCA 2012). Plaintiff has not presented

14

any evidence that she would have been unable to find a lawyer who would have taken the case without the possibility of a multiplier.  In fact, she does not present any evidence that she had difficulty obtaining counsel without a fee multiplier.

 *E.  Costs*

 Plaintiff seeks $13,238.74 in costs (doc. 151).  Rule 54(d) provides that costs shall be awarded as a matter of course to the prevailing party as enumerated in 28 U.S.C. § 1920. *United States E.E.O.C. v. W&O, Inc.*, 213 F.3d 600, 620 (11th Cir. 2000).  Section 1920 allows taxation of the following costs: (1) fees of the clerk and marshal; (2) fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case; (3) fees and disbursements for printing and witnesses; (4) fees for exemplification and copies of papers necessarily obtained for use in the case; (5) docket fees under 28 U.S.C. § 1923; and (6) compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses and costs of special interpretation services under 28 U.S.C. § 1828. Under Rule 54, there is a strong presumption in favor of awarding costs.  *See Schultz v. Ashcroft*, 174 Fed. App'x 534, 540 (11th Cir. 2006).

 Defendant argues that some of Plaintiff's costs are not adequately supported or are unrecoverable under the statute.  Some of Defendant's points have merit, but others do not. Defendant says Plaintiff fails to offer a receipt for the clerk's fee ($422.30).  However, she originally filed this action in state court, which Defendant removed here.  It is well settled that the fee for filing a civil action there is $400; accordingly, I award her $400 for clerk's fees. Defendant also argues that her claim for $27.86 for a late payment on a transcript is not

recoverable.  I agree, and will deduct this amount from the costs requested by Plaintiff. *Palma v. Safe Hurricane Shutters, Inc.*, 895 F. Supp. 2d 1268, 1274 (S.D. Fla. 2012). Defendant objects to costs for service of subpoenas, arguing that they are not recoverable under case law.  However, "[i]t is well settled that costs for having a private process server serve . . . subpoenas are compensable to the extent the private process server's fees are limited to the fees authorized in 28 U.S.C. § 1921." *Magaldi v. Safeco Ins. Co. of Am.*, 2009 WL 1851102, at * 6 (S.D. Fla. June 29, 2009).  That statutory fee is $65 per hour.  *See* 28 U.S.C. § 1921; 28 C.F.R. § 0.114(a)(3); 78 Fed. Reg. 59817-01 (Sept. 30, 2013). Accordingly, the three invoices with rush or priority fees should be reduced to $65 each. Defendant also claims that Plaintiff cannot recover an "undocumented" $900 fee for her expert witness.  This fee is for Plaintiff's fee expert, a cost not compensable under § 1920. *Tiara Condo. Ass'n, Inc. v. Marsh USA, Inc.*, 697 F. Supp. 2d 1349, 1371 (S.D. Fla. 2010) ("Section 1920(6) clearly states that only costs for court appointed experts may be taxed."). Defendant next objects to Plaintiff's $46.40 in copying charges.  A prevailing party may recover "the cost of making copies of any materials where the copies are necessarily obtained for use in the case." 28 U.S.C. § 1920(4).  The prevailing party has the burden of showing that the copies were necessary. *Tiara Condo*, 697 F. Supp. 2d at 1372.  Plaintiff has not shown these copies (Defendant's summary judgment motion and Plaintiff's response) were necessary, particularly when those copies were made after the trial had ended.  Finally, Defendant argues that Plaintiff's mediation costs are not recoverable.  Normally, court-ordered mediation expenses are not awarded in the Eleventh Circuit as they fall outside the

16

parameters of 28 U.S.C. § 1920. *See Gary Brown & Assocs., Inc. v. Ashdon, Inc.*, 268 Fed. App'x 837, 845–46 (11th Cir. 2008). As a result, I exclude from the bill $1,137.50 in mediation fees.

In summary, I award Plaintiff the following costs:

| Cost | Amount Requested | Amount Awarded |
|------|------------------|----------------|
| Fees of the Clerk | $422.30 | $400.00 |
| Fees for the service of summons and subpoena | $470.00 | $330.00 |
| Fees for . . . transcripts necessarily obtained for use in the case | $5,618.82 | $5,590.96 |
| Fees for witnesses | $1,244.46 | $344.46 |
| Fees for . . the costs of making copies . . . necessarily obtained for use in the case | $46.40 | $0.00 |
| Other costs | $5,436.76 | $4299.26 |
| **TOTAL** | $13,238.74 | **$10,964.68** |

*F. Conclusion*

For all these reasons, it is ORDERED:

(1)    Plaintiff's motion for fees (doc. 150) is GRANTED to the extent that Plaintiff

is awarded $54,918 in attorneys' fees.

(2)     Plaintiff is awarded $10,964.68 in costs.

IT IS SO ORDERED in Tampa, Florida on November 20, 2015.


MARK A. PIZZO
UNITED STATES MAGISTRATE JUDGE